```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
BIANCA FLEMING,                         :
                                                    03 Civ. 5639 (WHP)
              Plaintiff,                :
                                                    AMENDED
         -against-                      :           MEMORANDUM AND ORDER

VERIZON NEW YORK, INC.,                 :

              Defendant.                :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
```

WILLIAM H. PAULEY III, District Judge:

    Bianca Fleming ("Plaintiff" or "Fleming") brings this employment discrimination action against her former employer, Verizon New York, Inc. ("Verizon"), pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq.; the Americans with Disabilities Act of 1990 (the "ADA"), 42 U.S.C. §§ 12111-17; New York State Human Rights Law (the "HRL"), N.Y. Exec. Law § 290 et seq.; and New York City Human Rights Law (the "NYCHRL"), N.Y.C. Admin. Code § 8-101 et seq. Verizon moves to dismiss Plaintiff's Amended Complaint pursuant to Federal Rules of Civil Procedure 8, 10 and 12(b)(6). For the reasons set forth below, Verizon's motion is granted in part and denied in part.

## BACKGROUND

    Verizon hired Fleming, an African-American female, as a "Field Technician/ Splicer" on June 8, 1998. (Amended Verified Complaint, dated July 27, 2004 ("Compl.") ¶¶ 3, 10.) Fleming's duties included installing and maintaining Verizon's cable splices in cross boxes atop telephone poles. (Compl. ¶¶ 10, 24.)

I. <u>The 226th Street and Woodside Garages</u>

In July 1998, Fleming was assigned to Verizon's 226th Street Garage in Queens, New York. (Compl. ¶ 12.) There, work crews were divided into air pressure and splicing "gangs." (Compl. ¶ 13.) Plaintiff alleges that the gangs were segregated by race and gender: Fleming and other female and black employees worked in air pressure gangs, while white male employees were assigned to splicing gangs. (Compl. ¶ 13.) Splicing gangs were treated differently than air pressure gangs; they enjoyed opportunities for overtime and training not available to air pressure gangs. (Compl. ¶¶ 14, 15.) Further, splicing gangs' training rooms were equipped with chairs, while air pressure gangs had to stand or sit on the floor. (Compl. ¶ 17.) Fleming's foreman ignored her complaints about the difference in treatment. (Compl. ¶ 17.)

On February 1, 1999, Verizon transferred Plaintiff to the Woodside Garage in Queens, where her foreman was Eugene Hinners ("Hinners"). (Compl. ¶¶ 18-19.) Again, Plaintiff alleges, Verizon treated female and black workers differently than their white male counterparts. (Compl. ¶¶ 18-22.) For example, white males received assignments in safe neighborhoods, used air-conditioned trucks and laptop computers and had access to continued training. (Compl. ¶¶ 18, 21.) In contrast, Verizon consistently assigned female and black workers to less desirable neighborhoods in older trucks lacking air-conditioning. (Compl. ¶¶ 18-19, 21.) Some of these trucks contained pin-ups and calendars of women in bathing suits. (Compl. ¶ 22.)

Plaintiff complained to Hinners about the disparate treatment of blacks and women. (Compl. ¶ 20.) Plaintiff alleges that both Hinners and the Area Operations Manager, George Van Houten ("Van Houten"), responded by subjecting her to "unusually severe and constant scrutiny." (Compl. ¶¶ 20, 22.) Beginning in April 1999, Hinners accused Plaintiff of

2

having an affair with a co-worker. (Compl. ¶ 22.) Plaintiff alleges that Hinners spied on her and made frequent innuendos about her supposed relationship. (Compl. ¶ 22.)

In December 1999, Verizon granted Fleming's request for a transfer and placed her under the supervision of Walter Lomax ("Lomax"). (Compl. ¶ 23.) Plaintiff alleges that notwithstanding her change of supervisor, Van Houten ensured that she was subject to greater scrutiny than similarly situated white males. (Compl. ¶ 23.)

II. Plaintiff's Medical Condition

On September 1, 2000, Plaintiff fainted on the job. (Compl. ¶ 24.) Fleming went on temporary leave and her doctor diagnosed her with vasovagal syncope, a medical condition that causes blood vessel dilation and loss of consciousness. (Compl. ¶¶ 24-25.) Plaintiff's physician advised Verizon that Fleming was able to drive, but that she should avoid prolonged standing, working on ladders and climbing telephone poles. (Compl. ¶ 25.)

When Fleming returned to work on October 16, 2000, Verizon placed her on light duty at its College Point Control Center ("CPCC") in Queens, where she performed clerical and accounting tasks. (Compl. ¶ 26.) Once again, Lomax and Van Houten supervised Plaintiff and subjected her to close scrutiny. (Compl. ¶ 26.) Van Houten prohibited Plaintiff from driving, using tools, operating machinery or working outdoors even though Fleming's physician had not recommended such restrictions. (Compl. ¶ 26.)

On May 17, 2001, Verizon gave Fleming 90 days to find a position compatible with her medical condition. (Compl. ¶ 27.) However, in a Catch-22, Plaintiff was unable to find a position because Verizon had imposed a hiring freeze. (Compl. ¶ 27.) Thereafter, Verizon searched its job database for suitable open positions for Fleming. (Compl. ¶ 28.) Although

3

Plaintiff wanted to work in Manhattan, Verizon's database search only included Queens. (Compl. ¶ 28.) According to Fleming, Verizon ignored her requests to be transferred to Manhattan or assigned to a Field Technician job that did not require climbing. (Compl. ¶ 30.)

III. <u>Plaintiff's Involuntary Leave</u>

After more than one year on light duty at CPCC, Verizon forced Fleming to go on disability leave in mid-November 2001. (Compl. ¶ 31.) Plaintiff claims that Verizon routinely allowed white male workers to remain on light duty for much longer periods. (Compl. ¶ 31.)

Plaintiff received her regular pay during the first five weeks of her involuntary leave. (Compl. ¶ 31.) Thereafter, she received only half her salary. (Compl. ¶ 31.) While on leave, Plaintiff monitored Verizon's job postings and applied for positions consistent with her qualifications and medical restrictions. (Compl. ¶ 33.) Verizon did not offer Plaintiff any of these positions and instead filled them with employees who had less seniority than Fleming. (Compl. ¶ 33.)

On May 2, 2002, Verizon offered Plaintiff an escort position that would allow her to accompany technicians to worksites and not require her to climb. (Compl. ¶ 34.) Fleming accepted the position; however, Verizon rescinded the offer almost immediately. (Compl. ¶ 34.) Fleming attributes the offer withdrawal to Van Houten's intervention and claims that Verizon filled escort positions with less senior employees. (Compl. ¶ 34.)

IV. <u>Procedural History</u>

On June 12, 2002, Fleming filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC"). (Compl. ¶ 38; Affidavit of Bianca

4

Fleming, dated Oct. 25, 2004 ("Fleming Aff.") Ex. A-2.) Plaintiff's charge (the "EEOC Charge") alleged discrimination based on race, sex, disability and perceived disability between July 1998 and May 2002. (Fleming Aff. Ex A-2.) The EEOC Charge alleges that the conduct described therein constitutes "actionable claims of employment discrimination under federal, state and local statutes," including Title VII, the HRL and the ADA. (Fleming Aff. Ex A-2.)

Soon after Fleming filed her EEOC Charge, Verizon offered her a clerical position in Manhattan. (Compl. ¶ 38.) Plaintiff accepted the position. Since then, she has applied unsuccessfully for other positions at Verizon that were later filled by less senior employees. (Compl. ¶ 40.)

The EEOC issued Fleming a right-to-sue letter on April 30, 2003. (Compl. ¶ 6.) Proceeding pro se, Plaintiff filed a complaint (the "Pro Se Complaint") in this Court on July 30, 2003. (Complaint, dated July 30, 2003 ("Pro Se Compl.").) Using the form this Court provides pro se plaintiffs in discrimination suits, Fleming indicated that she was asserting claims under Title VII and the ADA for race, gender and disability discrimination. (Pro Se Compl. at 1, 3.) Plaintiff included a detailed narrative of her allegations and attached copies of the EEOC Charge and her right-to-sue letter.

On August 4, 2004, after retaining counsel, Plaintiff filed an eight-count Amended Complaint. Plaintiff alleges that Verizon violated Title VII, the HRL and the NYCHRL by discriminating against her on the basis of her gender and race and subjecting her to a sexually hostile work environment.[1] (Compl. ¶¶ 42-43, 46-49.) Plaintiff also alleges that Verizon discriminated against her because of her perceived disability, in violation of the ADA.

---

[1] Plaintiff refers repeatedly to a "racially and sexually hostile work environment" in her motion papers (Plaintiff's Memorandum in Opposition to Motion to Dismiss ("Pl. Mem.") at 1, 15), but the Amended Complaint alleges only "a sexually hostile work environment" (Compl. ¶¶ 43, 47, 49).

(Compl. ¶¶ 44-45.) Finally, Plaintiff alleges that Verizon retaliated against her for complaining of sex, race and disability discrimination in violation of each of these statutes. (Compl. ¶¶ 50-57.)

Verizon moves to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that Plaintiff failed to administratively exhaust certain Title VII claims and that many of Plaintiff's allegations are time-barred. Verizon also contends that the Amended Complaint fails to satisfy the pleading standards of Rules 8 and 10.

## DISCUSSION

On a motion to dismiss pursuant to Rule 12(b)(6), a court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in a plaintiff's favor. Hartford Courant Co. v. Pellegrino, 380 F.3d 83, 89-90 (2d Cir. 2004). A court should not dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); accord Jacobs v. Ramirez, 400 F.3d 105, 106 (2d Cir. 2005). Dismissal is proper when the plaintiff fails to plead the basic elements of a cause of action. See In re Scholastic Corp. Secs. Litig., 252 F.3d 63, 69 (2d Cir. 2001). The issue on a motion to dismiss is not "whether plaintiff will prevail, but simply whether she is entitled to offer evidence to support her claims." Taylor v. Vt. Dep't of Educ., 313 F.3d 768, 788 (2d Cir. 2002).

I. Exhaustion of Administrative Remedies

A plaintiff must exhaust her administrative remedies before bringing a Title VII suit. Deravin v. Kerik, 335 F.3d 195, 200 (2d Cir. 2003); accord Terry v. Ashcroft, 336 F.3d

128, 150-51 (2d Cir. 2003).² A court may only entertain Title VII claims that were raised in or are reasonably related to the claims in the plaintiff's EEOC charge. Deravin, 335 F.3d at 200; Terry, 336 F.3d at 151; Shah v. N.Y. State Dep't of Civil Serv., 168 F.3d 610, 613-14 (2d Cir. 1999). This exhaustion requirement serves "to give the administrative agency the opportunity to investigate, mediate, and take remedial action," Stewart v. United States INS, 762 F.2d 193, 198 (2d Cir. 1985), and "enable[s] the EEOC to provide the alleged wrongdoer with notice and to permit possible conciliation," Foster v. Gueory, 655 F.2d 1319, 1323 (2d Cir. 1981).

Verizon argues that Plaintiff's Title VII claims for retaliation, a sexually hostile work environment and failure to accommodate her medical condition because of her race lack the requisite nexus to her EEOC Charge and are not properly before this Court. Plaintiff directs this Court to a document (the "Draft Charge") that encompasses many more allegations than the EEOC Charge. (Fleming Aff. Ex. A-1.) Plaintiff attests that she prepared the Draft Charge and brought it to the EEOC, where an EEOC employee prepared the relatively abridged EEOC Charge that Fleming signed and filed. (Fleming Aff. ¶ 2.) Plaintiff argues that her claims in this action should be measured against the Draft Charge for purposes of exhaustion.

The Second Circuit has recognized only three circumstances in which claims not alleged in an EEOC charge are sufficiently related to the charge to be asserted in a civil action: (1) where the claim concerns conduct that would fall within the scope of the EEOC investigation that can reasonably be expected to grow out of the charge; (2) where the claim alleges retaliation for filing the EEOC charge; or (3) where the claim concerns further incidents of discrimination

---

² Both parties refer to exhaustion as a jurisdictional requirement. "The requirement that a claim be first raised with the EEO office, however, is not a jurisdictional one. . . . [but], 'like a statute of limitations, is subject to waiver, estoppel, and equitable tolling.'" Terry, 336 F.3d at 150 (quoting Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982)); see Francis v. City of New York, 235 F.3d 763, 766-68 (2d Cir. 2000).

7

carried out in precisely the same manner alleged in the EEOC charge. Terry, 336 F.3d at 151. Courts have rejected the argument that allegations made to EEOC officers but not included in the actual charge should be deemed "reasonably related" to the charge. In Sussle v. Sirina Protection Systems Corp., 369 F. Supp. 2d 285 (S.D.N.Y. 2003), the plaintiff contended that he had exhausted certain claims by including them in a questionnaire he completed and submitted to the EEOC clerk. Judge Knapp held that "it is the charge rather than the questionnaire that matters. A charge of discrimination enables the EEOC to investigate the allegations and negotiate with the employer. Only the charge is sent to the employer, and therefore only the charge can affect the process of conciliation." Sussle, 269 F. Supp. 2d at 315 (quoting Novitsky v. Am. Consulting Eng'rs, L.L.C., 196 F.3d 699, 701-02 (7th Cir. 1999)) (citations omitted); see also Manko v. Deutsche Bank, No. 02 Civ. 10180 (TPG), 2004 WL 574659, at *4 (S.D.N.Y. Mar. 22, 2004) (exhaustion measured by the charge actually filed and not by a plaintiff's statements to EEOC officers). The fact that Fleming provided a draft charge to the EEOC is irrelevant. Any claims not included in the final EEOC Charge itself could not be exhausted at the administrative level. See Manko, 2004 WL 574659, at *4.

Accordingly, this Court considers only the EEOC Charge in determining whether Plaintiff's Title VII claims were administratively exhausted.

    A. <u>Retaliation Claims</u>

Fleming claims that Verizon retaliated against her complaints of discrimination by assigning her "the worst work" and "subjecting her to unusually severe and constant scrutiny," in violation of Title VII. (Compl. ¶¶ 11, 20, 50-51.) In her EEOC Charge, Plaintiff claimed

numerous bases of discrimination but did not check off "retaliation" on the EEOC's form. (Fleming Aff. Ex. A-2.)

"Where the EEOC charge alleges discrimination but not retaliation, the reasonable scope of the agency's investigation cannot be expected to encompass allegations of retaliatory motive." Gambrell v. Nat'l R.R. Passenger Corp., No. 01 Civ. 6433 (NRB), 2003 WL 282182, at *8 (S.D.N.Y. Feb. 3, 2003); see Cordoba v. Bleu Deitl & Assocs., No. 02 Civ. 4951 (MBM), 2003 WL 22902266, at *10 (S.D.N.Y. Dec. 8, 2003); Harris v. New York City Dep't of Homeless Servs. Eligibility Investigation Unit, No. 97 Civ. 0432 (SAS), 1998 WL 205334, at *9 (S.D.N.Y. Apr. 28, 1998). The EEOC Charge does not allege any retaliatory acts or complaints from which a retaliatory motive may be acribed to Verizon. See Cordoba, 2003 WL 22902266, at *10; Mitchell v. FAB Indus., Inc., No. 96 Civ. 0095 (RWS), 1996 WL 417522, at *4 (S.D.N.Y. July 26, 1996) ("[A] plaintiff attempting to sue on additional grounds must have initially alleged facts sufficient to trigger an EEOC investigation on those grounds."). Moreover, Plaintiff claims that Hinners and Van Houten were the individuals who retaliated against her. (Compl. ¶ 20.) However, the EEOC Charge makes no mention of Van Houten and discusses Hinners only in connection with Verizon's alleged denial of training. (Fleming Aff. Ex. A-2.) Thus, Plaintiff's retaliation claim does not "fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the [EEOC Charge]." Terry, 336 F.3d at 151 (internal quotations omitted).

The other two classes of claims reasonably related to an EEOC charge are inapplicable to Plaintiff's retaliation claim. Plaintiff does not allege that Verizon retaliated against her for filing the EEOC Charge. Quite the contrary, Plaintiff alleges that Verizon rehired her after she filed the charge. (Compl. ¶ 38.) Nor does Plaintiff's retaliation claim allege actions

9

carried out in the same fashion as other incidents of retaliation alleged in the EEOC charge. As discussed above, the EEOC Charge does not allege <u>any</u> retaliatory actions.

Accordingly, Plaintiff's claims of retaliation were not contained in and are not reasonably related to her EEOC Charge. Because Plaintiff failed to exhaust those retaliation claims prior to bringing this action, Plaintiff's Fifth Cause of Action is dismissed.

B. <u>Sexually Hostile Work Environment</u>

Paragraph 22 of the Amended Complaint alleges that, while at the Woodside Garage, Fleming was "subjected to a sexually hostile work environment." Fleming claims that she was forced to work in trucks where pictures of women in bathing suits were displayed and that Hinners harassed her. (Compl. ¶ 22.) However, because Plaintiff's first cause of action explicitly encompasses all of the Amended Complaint's factual allegations (Compl. ¶¶ 42-43), this Court views her sexually hostile work environment claim as premised on each and every allegation that could reasonably support such a claim. See <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 21 (1993) (A hostile work environment exists "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." (citations and quotations omitted)); <u>accord</u> <u>Hayut v. State Univ. of N.Y.</u>, 352 F.3d 733, 745 (2d Cir. 2003).

Plaintiff's EEOC Charge did not preserve her hostile work environment claim. The EEOC Charge makes no reference to a sexually hostile work environment. Rather, the EEOC Charge claims only that "women suffer blatant discrimination as male colleagues and supervisors alike, treat women different from their male counterparts"; that "women have a

difficult time 'fitting in' to" men's roles; and "that women and men who perform the same assignment and have the same issues/problems are treated differently." (Fleming Aff. Ex. A-2.) The Court of Appeals has held such generalized assertions inadequate to define the scope of the EEOC investigation and serve as the predicate for claims in a federal lawsuit. <u>Butts v. City of New York Dep't of Hous. Pres. & Dev.</u>, 990 F.2d 1397, 1403 (2d Cir. 1993), <u>superseded on other grounds by</u> 42 U.S.C. § 1981(b) ("Were we to permit such vague, general allegations, . . . such allegations would become routine boilerplate and Title VII's investigatory and mediation goals would be defeated."); <u>accord</u> <u>Allen v. St. Cabrini Nursing Home</u>, No. 00 Civ. 8558 (CM), 2001 WL 286788, at *4 (S.D.N.Y. Mar. 9, 2001). Nor does Plaintiff's claim rely on acts conducted in precisely the same manner as acts alleged in the EEOC Charge.

Therefore, Plaintiff's Title VII claim of a sexually hostile work environment is dismissed due to Plaintiff's failure to exhaust her administrative remedies.

C. <u>Racially Discriminatory Failure to Accommodate Plaintiff's Medical Condition</u>

Finally, Fleming claims that Verizon failed to make reasonable accommodations for her medical condition and thereby discriminated against her on the basis of her race and gender. (Compl. ¶¶ 30, 43.) Verizon argues that the EEOC Charge claims a failure to accommodate based only on Plaintiff's gender, precluding any race-based claim.

The EEOC Charge alleges that Verizon forced Fleming off of light duty after approximately one year, although "there are many males who have similar medical restrictions and are able to stay on light duty indefinitely." (Fleming Aff. Ex. A-2.) The EEOC Charge also alleges that Verizon's "practice [and] policy on reasonable accommodations are [more] favorable to the White males than African American females." (Fleming Aff. Ex. A-2.) Taken together,

11

these allegations should have caused the EEOC to investigate discrepancies along both race and gender lines. Indeed, "it is the substance of the charge and not its label that controls." Alonzo v. Chase Manhattan Bank, N.A., 25 F. Supp. 2d 455, 458 (S.D.N.Y. 1998).

Thus, Plaintiff's claim of a racially discriminatory failure to accommodate her medical condition is sufficiently related to the gender-based claim asserted in the EEOC Charge. Accordingly, Verizon's motion to dismiss is denied in this regard.

II. Statutes of Limitations

Verizon contends that Fleming's HRL and NYCHRL claims and her Title VII claims are time-barred to the extent they rely on conduct that occurred prior to August 4, 2001 and August 16, 2001, respectively. Plaintiff contends that her Amended Complaint timely describes a continuing violation that extended through August 2001.

    A. The Continuing Violation Doctrine

For statute of limitations purposes, incidents of employment discrimination must be categorized either as discrete acts or continuing violations. Nat'l Passenger R.R. Corp. v. Morgan, 536 U.S. 101, 114-16 (2002).[3] Continuing violation arguments are disfavored and entertained only upon a showing of "compelling circumstances." Quadrozzi Concrete Corp. v. City of New York, No. 03 Civ. 1905 (LAP), 2004 WL 2222164, at *8 (S.D.N.Y. Sept. 30, 2004);

---

[3] New York courts have embraced the continuing violation doctrine with respect to HRL and NYCHRL claims. See Saunders v. N.Y. State Div. of Human Rights, 288 A.D.2d 478, 478, 732 N.Y.S.2d 901, 902 (2d Dep't 2001); Acosta v. Loews Corp., 276 A.D.2d 214, 217, 717 N.Y.S.2d 47, 50 (1st Dep't 2000); Walsh v. Covenant House, 244 A.D.2d 214, 215, 664 N.Y.S.2d 282, 283 (1st Dep't 1997).

see Blake v. Bronx Lebanon Hosp. Ctr., No. 02 Civ. 3827 (CBM), 2003 WL 21910867, at *5 (S.D.N.Y. Aug. 11, 2003).

A discrete act occurs at one particular time – for example, a retaliatory or discriminatory termination, failure to promote, denial of transfer or refusal to hire. Morgan, 536 U.S. at 111, 114. Each discrete act is a "a separate employment practice . . . , even if that action is simply a periodic implementation of an adverse decision previously made." Elmenayer v. ABF Freight Sys., Inc., 318 F.3d 130, 134 (2d Cir. 2003); see Morgan, 536 U.S. at 111 ("There is simply no indication that the term 'practice' [in 42 U.S.C. § 2000e-2] converts related discrete acts into a single unlawful practice for the purposes of timely filing."). A discrete act of discrimination is time-barred if it occurred prior to the applicable limitations period. Morgan, 536 U.S. at 113. By contrast, a continuing violation "occurs over a series of days or perhaps years" and "is composed of a series of separate acts that collectively constitute one unlawful employment practice." Morgan, 536 U.S. at 115, 117 (quotations omitted). A hostile work environment encompasses a series of related acts which may not be actionable standing alone and therefore constitutes a continuing violation. Morgan, 536 U.S. at 115-18; accord Elmenayer, 318 F.3d at 134-35. If a plaintiff establishes that one contributing act occurred within the applicable limitations period, all acts contributing to that violation may be timely challenged in the plaintiff's discrimination claim, even those occurring outside of the statutory period. Fitzgerald v. Henderson, 251 F.3d 345, 359 (2d Cir. 2001). Stated differently, the statute begins to run on the last discriminatory act in furtherance of the continuing violation. Cornwell v. Robinson, 23 F.3d 694, 703 (2d Cir. 1994). Each continuing violation must be assessed individually. See Meckenberg v. New York City Off-Track Betting, 42 F. Supp. 2d 359, 371-74 (S.D.N.Y. 1999).

Viewed in the light most favorable to Plaintiff, the Amended Complaint alleges that prior to August 2001, Plaintiff endured three distinct continuing violations. First, throughout her assignment to the 226th Street Garage (i.e., from July 1998 through January 1999), Fleming alleges that she experienced disparate treatment to that of her white male counterparts in that she received inferior equipment, less training and fewer overtime opportunities. (Compl. ¶¶ 12-17.) Second, Plaintiff alleges that she encountered similar disparities at the Woodside Garage from February 1, 1999 through September 1, 2000, where Plaintiff was dispatched to less desirable locations and forced to work out of trucks with pictures of women in bathing suits. (Compl. ¶¶ 18-22.) The alleged unequal work conditions at each garage "cannot be said to occur on any particular day" because they permeated Plaintiff's experiences at these facilities. Morgan, 536 U.S. at 115. Moreover, Plaintiff's transfer from the 226th Street Garage to the Woodside Garage demarcates two separate continuing violations, as even she concedes, because she worked in two different locations under different supervisors. (Pl. Mem. at 15 ("[T]he Woodside Garage was yet another racially and sexually hostile work environment." (emphasis added)).)[4] Cf. Cornwell, 23 F.3d at 704.

Third, the Amended Complaint alleges a continuing violation in that shortly after she started at the Woodside Garage until November 2001, Fleming was subjected to "severe scrutiny" by her supervisor, Van Houten, and by Hinners and Lomax. (Compl. ¶¶ 20-23, 26.) Although Fleming claims to have suffered this harassment both at the Woodside Garage and at CPCC, Van Houten's alleged conduct created one hostile work environment because he

---

[4] Plaintiff argues that her combined experience at the two garages constitutes one continuing violation because Verizon engaged in a "pattern and practice" of discrimination. (Pl. Mem. at 16-18.) However, the Amended Complaint does not assert such a pattern and practice claim. See Blake, 2003 WL 21910867, at *5 ("[T]he Court doubts that a plaintiff can bring a 'pattern and practice' claim in a non-class action complaint.").

14

supervised Fleming throughout both periods. See Cornwell, 23 F.3d at 704 (holding that a hostile work environment continued even after plaintiff's three-year absence because plaintiff "suffered the same kinds of harassment . . . under the aegis of some of the same supervisory personnel"); see also Fitzgerald, 251 F.3d at 362-63 (allegations of a "constant stream of unjustified criticisms of [plaintiff's] work described . . . a continuity of allegedly unlawful conduct").

The remainder of Plaintiff's factual allegations prior to August 2001 constitute discrete acts. Plaintiff alleges a discriminatory transfer (Compl. ¶ 16), refusals to transfer (Compl. ¶¶ 28, 30) and that Verizon discriminatorily narrowed its search for positions that could accommodate Fleming's medical condition (Compl. ¶ 28). See Morgan, 536 U.S. at 114 ("Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify."). The Amended Complaint also alleges that Van Houten failed to reasonably accommodate Fleming's medical condition from October 2000 to November 2001 by limiting her employment to clerical tasks, although she was capable of more. (Compl. ¶ 26.) This failure to accommodate springs from Plaintiff's October 16, 2000 assignment to light duty. That assignment constitutes one discrete act, even though Plaintiff claims to have sustained the effects over a longer period. See Elmenayer, 318 F.3d at 134-35 ("[A]n employer's rejection of an employee's proposed accommodation . . . does not give rise to a continuing violation. . . . Although the effect of the employer's rejection continues to be felt by the employee for as long as he remains employed, that continued effect is similar to the continued effect of being denied a promotion or denied a transfer." (emphasis in original)).

B. Title VII Claims

A plaintiff may not assert Title VII claims based on events more than 300 days prior to the filing of her EEOC charge. 42 U.S.C. § 2000e-5(e)(1); Butts, 990 F.2d at 1401. Fleming filed her EEOC Charge on June 12, 2002. (Compl. ¶ 38.) Thus, Plaintiff's Title VII claims are time-barred to the extent they rely on factual allegations prior to August 16, 2001, unless such allegations comprise a continuing violation extending beyond that date.

As discussed above, the only continuing violation alleged in the Amended Complaint that persisted after August 16, 2001 is Plaintiff's allegation of severe scrutiny from February 1999 until mid-November 2001. (Compl. ¶¶ 20-23, 26.) Therefore, Plaintiff's Title VII claims are dismissed as time-barred to the extent they rely on events before August 16, 2001, other than her claim that she was supervised much more closely and critically than her white male counterparts.

C. HRL and NYCHRL Claims

Plaintiff's HRL and NYCHRL claims are each governed by a three-year statute of limitations. N.Y. C.P.L.R. § 214(2); N.Y.C. Admin. Code § 8-502(d); Murphy v. Am. Home Prods. Corp., 58 N.Y.2d 293, 306-07 (1983). The parties dispute whether these claims relate back to the filing of Plaintiff's Pro Se Complaint, and thus dispute the date from which this three-year period should be measured.

Under Rule 15(c), an amended pleading "relates back to the date of the original pleading when . . . the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading."

Fed. R. Civ. P. 15(c)(2).[5] "The pertinent inquiry . . . is whether the original complaint gave the defendant fair notice of the new alleged claims." Wilson v. Fairchild Republic Co., 143 F.3d 733, 738 (2d Cir. 1998). "Provided the amended pleading is based on the same series of transactions and occurrences alleged in the original pleading, the revised pleading will relate back to the original pleading, even where the revised pleading contains legal theories not included in the original." White v. White Rose Food, 128 F.3d 110, 116 (2d Cir. 1997). The pleadings of pro se litigants are read "liberally and interpret[ed] to raise the strongest arguments they suggest." McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (internal quotations omitted).

Verizon contends that Fleming first raised HRL and NYCHRL claims in her Amended Complaint and that the three-year period should be measured from the filing of that pleading. According to Verizon, the Amended Complaint cannot relate back because Plaintiff's Title VII claims were time-barred in the Pro Se Complaint.

However, the Pro Se Complaint alleges the same "severe scrutiny" that Plaintiff timely sets forth in the Amended Complaint as a continuing violation under Title VII. As such, the Pro Se Complaint was not wholly untimely, and the cases on which Verizon relies are inapposite. See Henderson v. Bolanda, 253 F.3d 928, 932 (7th Cir. 2001) (holding that the amended complaint could not relate back to the original complaint, in which all claims were barred by the statute of limitations); Papenthien v. Papenthien, 16 F. Supp. 2d 1235, 1241 (S.D.

---

[5] Rule 15 also permits relation back when "permitted by the law that provides the statute of limitations applicable to the action." Fed. R. Civ. P. 15(c)(1). The applicable provision of New York law is C.P.L.R. § 203(f). "Although there are minor differences in the language between Rule 15(c)(2) and Section 203(f), courts have not focused on any distinction and have typically cited both rules and applied the federal rule." Kitrosser v. CIT Group/Factoring, Inc., 177 B.R. 458, 474 (S.D.N.Y. 1995) (citing Travelers Ins. Co. v. 633 Third Ave. Assocs., 14 F.3d 114, 125 (2d Cir. 1994)).

Cal. 1998) (same). Moreover, the form complaint Plaintiff completed instructs a plaintiff to check off the applicable federal laws but does not contain a similar option for non-federal claims. However, Plaintiff appended her EEOC Charge asserting claims under "state and local statutes" (Fleming Aff. Ex. A-2), and all documents attached to a complaint are deemed to be incorporated therein. Fed. R. Civ. P. 10(c); Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004). Construing the Pro Se Complaint liberally, the pleading asserted timely HRL and NYCHRL claims.

The Amended Complaint describes "the same series of transactions and occurrences alleged in the original pleading," White, 128 F.3d at 116, sufficient to give Verizon "fair notice" of Plaintiff's state and city law claims, Wilson, 143 F.3d at 738. Accordingly, the Amended Complaint relates back for statutes of limitations purposes, and the applicable limitations date for Plaintiff's HRL and NYCHRL claims is July 30, 2000.

As discussed above, the Amended Complaint alleges two continuing violations that ceased after July 30, 2000. First, Plaintiff alleges that, while at the Woodside Garage, she was afforded inferior equipment, less training and worse assignments than white males and worked in trucks containing pictures of women in bathing suits. (Compl. ¶¶ 18-22.) Second, Fleming alleges that Van Houten, Hinners and Lomax subjected her to "severe scrutiny" from early 1999 through November 2001. (Compl. ¶¶ 20-23, 26.) Accordingly, Plaintiff's HRL and NYCHRL claims are timely to the extent they are based on these continuing violations. However, Plaintiff's allegations of other conduct prior to July 30, 2000, including Plaintiff's experiences at the 226th Street Garage, are time-barred.

III. Rules 8 and 10

Each of the Amended Complaint's eight causes of action "repeat[] and reallege[] all of the allegations" in the complaint's previous paragraphs, and Plaintiff's first, third and fourth causes of action each assert a claim for "a sexually hostile work environment" as well as gender and race discrimination. (Compl. ¶¶ 42-57.) Verizon contends that the Amended Complaint fails to satisfy the basic pleading standards of the Federal Rules of Civil Procedure because it "fails to notify Verizon of the specific factual allegations Plaintiff relies on to support each count" and "commingles separate legal claims into a single count." (Defendant's Memorandum in Support of Motion to Dismiss at 7.)

"Rule 10(b) simply states that if multiple claims are based on a separate set of circumstances, they should be pled in separate counts." Caraveo v. Nielsen Media Research, Inc., No. 01 Civ. 9609 (LBS), 2002 WL 530993, at *3 (S.D.N.Y. Apr. 8, 2002). The fact that Plaintiff collects multiple claims under certain counts merely reflects that those claims are based on the same factual allegations. Moreover, despite not linking each count to individual paragraphs, the pleading satisfies Rule 8 by providing "fair notice of the claim[s] asserted so as to enable [Verizon] to answer and prepare for trial." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988). "To demand reiteration of those facts would be contrary to Rule 8(a), which provides that a complaint shall contain 'a short and plain statement' of the grounds for relief." Goldstein v. CTT Mobile Mgmt. Servs., Inc., No. 84 Civ. 824 (JFK), 1985 WL 321, at *9 (S.D.N.Y. Feb. 26, 1985). Accordingly, Verizon's motion to dismiss the Amended Complaint pursuant to Rules 8 and 10 is denied.

## CONCLUSION

For the foregoing reasons, Verizon's motion to dismiss is granted in part and denied in part. Specifically, Plaintiff's Fifth Cause of Action for Title VII retaliation and her Title VII claim of a sexually hostile work environment are dismissed with prejudice. Plaintiff's Title VII discrimination and gender- and race-based failure-to-accommodate claims are dismissed with prejudice to the extent they rely on conduct prior to August 16, 2001, except for allegations of "severe scrutiny" conduct. Plaintiff's HRL and NYCHRL claims are dismissed with prejudice to the extent that they are premised on conduct occurring before July 30, 2000, other than allegations of unequal treatment at the Woodside Garage and "severe scrutiny" through November 2001. In all other respects, Verizon's motion to dismiss is denied.

Dated: November 16, 2005
New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.

*Copies mailed to:*

Phyllis Gelman, Esq.
Lindsay Nicely Feinberg, Esq.
Gelman & Feinberg
60 East 42nd St., Suite 1060
New York, NY 10165
*Attorneys for plaintiff*

A. Jonathan Trafimow, Esq.
Judith Stempler, Esq.
Epstein, Becker & Green, P.C.
250 Park Avenue
New York, NY 10177
*Attorneys for defendant*